**NOT FOR PUBLICATION**

```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

|   |   |
|---|---|
| EVEREST REINSURANCE COMPANY, | CIVIL ACTION NO. 11-2789 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. |   |
| CENTURY INDEMNITY COMPANY, |   |
| Defendant. |   |

**COOPER, District Judge**

This matter is before the Court on the Motion to Enforce Settlement ("Motion") by Plaintiff, Everest Reinsurance Company ("Everest"). (Dkt. entry no. 19.) For the reasons set forth below, the Court will deny the Motion and direct the Clerk of the Court to designate this action as closed.

## BACKGROUND

The Court, for purposes of reciting the background of this action, accepts the facts as Everest presents them in the brief supporting the Motion and in the Amended Complaint.[1] Everest and Defendant, Century Indemnity Company ("Century"), entered into a

---

[1] Everest commenced this action by filing a document titled "Petition to Appoint Umpire Pursuant to 9 U.S.C. § 5". (Dkt. entry no. 1, Compl.) This document is, in actuality, the Complaint. See Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the Court."). The "Amended Petition to Appoint Umpire Pursuant to 9 U.S.C. § 5" is, thus, an Amended Complaint. (See dkt. entry no. 5, Am. Compl.)

First Excess General Liability Excess of Loss Reinsurance Agreement ("Treaty"), effective January 1, 1978.  (Am. Compl. at ¶ 6.)  Through the Treaty, Everest agreed to reinsure certain liabilities insured by Century, and both parties agreed to submit disputes arising under the Treaty to arbitration.  (Id. at ¶¶ 6-7.)  The parties agreed to hold such arbitration before a panel consisting of two party-appointed arbitrators and a neutral umpire.  (Id. at ¶¶ 7, 9; dkt. entry no. 19-1, Everest Br. Supporting Mot. to Enforce Settlement at 1, 6-8.)

Century demanded such arbitration on February 4, 2011.  (Am. Compl. at ¶ 8.)  The underlying dispute rises from Century's reinsurance claims against Everest for payments relating to "certain Formosa Plastics asbestos products and asbestos non-products claims."  (See id.)  The arbitration for those claims is the "Formosa Arbitration".  (See, e.g., Everest Br. Supporting Mot. to Enforce Settlement at 1; dkt. entry no. 23, Century Opp'n at 5.)

The parties, following Century's demand for arbitration and pursuant to the terms of the Treaty, selected and appointed their respective arbitrators, and drafted and exchanged lists of proposed neutral umpires.  (Am. Compl. at ¶ 9.)  They were unable, however, to agree upon any of the proposed candidates for umpire.  (See id. at ¶¶ 10-15.)  This action followed.

**PROCEDURAL POSTURE**

Through the Amended Complaint, Everest detailed the history of the Formosa Arbitration and "respectfully request[ed] that this Court appoint an umpire in this case or grant such alternate relief as [was] proper." (Id. at ¶ 18.) Everest specifically, in its request for relief, sought an Order:

> (a) appointing one of Everest's umpire candidates to serve as umpire in the arbitration between Century and Everest;
> (b) alternatively, appointing a neutral party of the Court's choosing to serve as an umpire;
> (c) alternatively, requiring Century to participate in a neutral umpire selection process; and
> (d) granting such other relief as the Court deems proper.

(Id. at 5 (ad damnum clause).)

Everest also filed a "Motion to Appoint Umpire Pursuant to 9 U.S.C. § 5", seeking nearly identical relief. (Dkt. entry no. 8, Notice of Mot.; dkt. entry no. 8-1, Everest Br. Supporting Mot. to Appoint Umpire at 34 ("Everest respectfully requests that this Court enter an Order either appointing one of Everest's umpire candidates or some other neutral party to serve as an umpire in the arbitration between Everest and Century, or alternatively, requiring Century to participate in the neutral selection process proposed by Everest.").) In its supporting brief, Everest described the ARIAS neutral umpire selection process, an industry standard for umpire selection, and suggested that the Court compel Century to participate in that process. (Everest Br.

3

Supporting Mot. to Appoint Umpire at 32-33.) Century responded by filing what it referred to as a Motion to Dismiss Everest's Motion to Appoint Umpire. (Dkt. entry no. 18, Mot. Dismiss.)

Century, however, thereafter contacted Everest and proposed that the parties select an umpire, using the ARIAS selection process. (See Everest Br. Supporting Mot. to Enforce Settlement at 1.) Everest agreed, subject to "certain minor adjustments" to the selection process. (Id. at 1.) Everest and Century also agreed to use the adjusted umpire selection process in two other pending arbitrations, the "Congoleum Arbitration" and "Flintkote Arbitration". (Id.)

Pursuant to their agreement to use the adjusted umpire selection process in these three proceedings ("Global Agreement"), Everest and Century selected an umpire in the Formosa Arbitration and notified the Court, by letter dated September 30, 2011, of such selection. (See dkt. entry no. 22, Letter From Everest's Counsel ("the parties have selected an umpire in the Formosa Arbitration pursuant to the parties' global agreement").) The parties also noted that the Motion to Appoint Umpire and Motion to Dismiss were moot and, accordingly, they withdrew both motions. (Id.)

Everest, through the Motion and supporting papers, now alleges that Century breached the Global Agreement by moving in the United States District Court for the Southern District of New

York to consolidate the Congoleum Arbitration with a fourth arbitration, the "Foster Wheeler Arbitration". (Everest Br. Supporting Mot. to Enforce Settlement at 2).[2] The Foster Wheeler Arbitration, unlike the Congoleum Arbitration, is ongoing; in the Foster Wheeler Arbitration, the parties have already selected and appointed a panel, and completed document discovery. (Id. at 3.) Everest thus argues, inter alia, that Century's attempt to consolidate the Congoleum Arbitration and Foster Wheeler Arbitration "is in reality nothing more than a strategic play by Century to present the Congoleum [A]rbitration dispute to an arbitration panel of its choosing rather than a panel selected as the parties had agreed." (Id. at 2.)

Everest also alleges, in contradiction to its earlier filings, that the parties have not yet selected an umpire in the Formosa Arbitration. Everest instead claims that the parties are still engaged in that umpire selection process. (Id. at 10.) Everest does not, however, indicate that this process has "deadlocked," as it had in earlier filings. (Compare id., with Everest Br. Supporting Mot. to Appoint Umpire at 9-12.)

Everest thus seeks enforcement of the Global Agreement "with respect to umpire selection in the Formosa, Congoleum and Flintkote arbitrations, and requiring Century to withdraw its

---

[2] See Petition to Compel Arbitration, Century Indem. Co. v. Everest Reinsurance Co., No. 11-5893-LTS, dkt. entry no. 1 (S.D.N.Y. Aug. 22, 2011).

5

motion to consolidate the Congoleum arbitration into the Foster Wheeler arbitration[.]"  (Everest Br. Supporting Mot. to Enforce Settlement at 24.)

### DISCUSSION

### I. Everest's Request for Relief with Respect to the Congoleum Arbitration and the Flintkote Arbitration

As noted in the Amended Complaint, "[t]his is an action to appoint an umpire, pursuant to Section 5 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 5."  (Am. Compl. at ¶ 1.)  This is, more specifically, an action to appoint an umpire in the Formosa Arbitration.  (See id. at ¶¶ 8, 18 (referencing the parties' dispute relating to Century's  "reinsurance billing of certain Formosa Plastics asbestos products and non-products claims[,]" and seeking related relief "in this case" (emphasis added)).)  Everest has repeatedly stated that its request for relief was specific to the Formosa Arbitration.  (See id.; Everest Br. Supporting Mot. to Appoint Umpire (noting need for umpire in Formosa Arbitration and failing to otherwise mention need for umpire selection in other pending arbitration proceedings).)

Because Everest did not seek relief relating to the Congoleum Arbitration or the Flintkote Arbitration in either the Complaint or the Amended Complaint, the Court will not grant such relief now.  A movant may not seek relief beyond the scope of its initial pleadings.  See Schneiderman v. United States, 320 U.S.

6

118, 159-60 (1943) (limiting argument, in naturalization proceeding, to matters charged in the complaint); <u>Liberty Lincoln-Mercury v. Ford Motor Co.</u> 134 F.3d 557, 569-70 (3d Cir. 1998) (reversing entry of judgment premised upon claim first raised in plaintiff's "Motion to Enforce"); <u>Morris v. Phila. Hous. Auth.</u>, No. 95-6650, 1996 WL 167615, at *4 (E.D. Pa. Apr. 10, 1996) (noting that plaintiff may not move for judgment on claims not raised in complaint), <u>aff'd</u>, 106 F.3d 386 (3d Cir. 1996) (table).  The Court will, accordingly, deny the Motion insofar as Everest seeks relief relating to the Congoleum Arbitration and Flintkote Arbitration.

The Court's decision in this matter is buttressed by Federal Rule of Civil Procedure ("Rule") 8.  Rule 8 protects parties from surprise and undue prejudice in litigation, by requiring the party seeking relief to set forth a short and plain statement of its claims for relief and a demand for such relief.  Fed.R.Civ.P. 8(a)(2)-(3); <u>see also</u> <u>Sun Microsystems v. Versata Enters., Inc.</u>, 630 F.Supp.2d 395, 409 n.11 (D. Del. 2009) (noting that purpose of Rule 8 "is to avoid surprise and undue prejudice").  Granting Everest relief beyond that sought in the Amended Complaint would contravene the purpose of Rule 8 and subject Century to such surprise and undue prejudice.

7

## II. Everest's Request for Relief with Respect to the Formosa Arbitration

The Court will also deny the Motion insofar as Everest seeks relief pertaining to the Formosa Arbitration, as moot.  Everest came before the Court, asking the Court either to appoint an umpire or to compel Century to participate in a neutral umpire selection process.  (Am. Compl.; Mot. to Appoint Umpire.)  When Century agreed to participate in the ARIAS selection process, Everest obtained by settlement the relief it sought by judicial intervention.  (See Letter From Everest's Counsel; see also Everest Br. Supporting Mot. to Appoint Umpire at 9-12 (detailing parties' joint efforts to move forward with Formosa Arbitration).)  Because Everest has failed to demonstrate how or if Century breached the Global Agreement inasmuch as it affects the Formosa Arbitration--because, in fact, Everest has demonstrated that Century has willingly participated in the Formosa Arbitration umpire selection process (see Everest Br. Supporting Mot. to Enforce Settlement at 9-12)--the Court will not intervene.

### CONCLUSION

The Court will issue an appropriate Order, denying the Motion.  Because Everest has obtained the relief sought in its Amended Complaint, the Court will further order the Clerk of the Court to designate this action as closed.

8

    The Court notes that Everest will not be prejudiced by this ruling.  Insofar as Everest sought relief in the Congoleum Arbitration through the Motion, Everest may file an appropriate motion before the arbitration board in that matter or in case number 11-5893 in the Southern District of New York, where other motions relating to the Congoleum Arbitration are pending.  Further, insofar as the Motion sought relief in the Formosa Arbitration, Everest has obtained the relief it sought.  If, however, the umpire selection process in the Formosa Arbitration falls apart or otherwise deadlocks again, Everest may bring a new action seeking relief.

                                                    s/ Mary L. Cooper  
                                                  **MARY L. COOPER**  
                                                  United States District Judge

Dated:    October 28, 2011